**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| COSTAR REALTY INFORMATION, INC.,<br>2 Bethesda Metro Center, 10th Floor<br>Bethesda, Maryland 20814,<br><br>and<br><br>COSTAR GROUP, INC.,<br>2 Bethesda Metro Center, 10th Floor<br>Bethesda, Maryland 20814,<br><br>            Plaintiffs,<br><br>v.<br><br>DAVID ARFFA,<br>6050 N. Oracle Road, Suite B<br>Tucson, AZ 85704,<br><br>and<br><br>ROBIN MEISSNER,<br>12355 N. Insun Street<br>Marana, AZ 85653<br><br>            Defendants. | Civil Action No. 8:08-cv-02766 |

<u>**COMPLAINT**</u>

Plaintiffs COSTAR REALTY INFORMATION, INC., a Delaware Corporation, and COSTAR GROUP, INC., a Delaware Corporation (collectively "CoStar" or "Plaintiffs"), for their Complaint against Defendants David Arffa ("ARFFA") and ROBIN MEISSNER ("MEISSNER"), allege as follows:

## PARTIES

1.      CoStar Realty Information, Inc. is a corporation organized and existing under the laws of the State of Delaware with its principal place of business and corporate offices located at 2 Bethesda Metro Center, 10th Floor, Bethesda, Maryland  20814-5388.

2.      CoStar Group, Inc. is a corporation organized and existing under the laws of the State of Delaware with its principal place of business and corporate offices located at 2 Bethesda Metro Center, 10th Floor, Bethesda, Maryland  20814-5388.

3.      Defendant ARFFA is, upon information and belief, an Arizona resident who does business as Arffa Appraisal, LLC, located at 6050 N. Oracle Drive, Suite B, Tucson, Arizona, 85704.

4.      Defendant MEISSNER is, upon information and belief, an Arizona resident who does business as Twinkle Appraisal LLC, located at 4255 E. Desert Forest Trail, Cave Creek Arizona, 85331.

## JURISDICTION AND VENUE

5.      This Court has federal question jurisdiction over the action pursuant to 28 U.S.C. § 1331 as an action that arises under the laws of the United States.  The Court further has exclusive federal jurisdiction pursuant to 28 U.S.C. § 1338(a) as a case arising under the Copyright Act.  This Court has subject matter jurisdiction over CoStar's claims for unauthorized access to computers and related claims pursuant to 18 U.S.C. § 1030.

6.      This Court has diversity jurisdiction over the action pursuant to 28 U.S.C. § 1332.  The controversy is between citizens of different states, and the amount in controversy exceeds $75,000, exclusive of interest and costs.  This Court has supplemental jurisdiction over Plaintiffs' claims arising under the laws of Maryland pursuant to 28 U.S.C. § 1367(a) because these claims are so related to

Plaintiffs' claims under federal law that they form part of the same case or controversy and derive from a common nucleus of operative fact.

7.     Venue is proper in this District pursuant to 28 U.S.C. §1391 because a substantial part of the events giving rise to the claims occurred in this District, and a substantial part of the property that is the subject of the action is situated in this District.

8.     Personal jurisdiction over ARFFA is proper in this District because: (a) by agreeing to the Terms of Use for the www.costar.com website, ARFFA has consented to the jurisdiction of this Court; (b) ARFFA has committed tortious and other actionable acts alleged herein with foreseeable consequences in this District, and have caused actual tortious injury in this District; and (c) ARFFA has purposefully directed his unlawful behavior at this District by repeated electronic activity and interaction with CoStar's computer servers in Bethesda, MD when logging into the subscription service at the www.costar.com website for business purposes.

9.     Personal jurisdiction over MEISSNER is proper in this District because: (a) by agreeing to a license agreement with CoStar, MEISSNER agreed to be subject to the jurisdiction of Maryland courts; (b) by agreeing to the Terms of Use for the www.costar.com website MEISSNER has consented to the jurisdiction of this Court; (c) MEISSNER has committed tortious and other actionable acts alleged herein with foreseeable consequences in this District, and have caused actual tortious injury in this District; and (d) MEISSNER has purposefully directed her unlawful behavior at this District by repeated electronic activity and interaction with CoStar's computer servers in Bethesda, MD when logging into the subscription service at the www.costar.com website for business purposes.

## **BACKGROUND**

10.     CoStar is a leading national commercial real estate information services provider.  At enormous effort and expense, CoStar has created state-of-the-art software technology and research methods to develop one of the most comprehensive commercial real estate information databases available.  CoStar currently employs the services of approximately 800 trained research professionals, including a field research force with over 120 research photographers and a fleet of over 100 specially equipped field research vehicles, that canvass the country, building information and analysis and photographs that are integrated into an enormous database that is updated daily.

11.     CoStar's photographs and the other information in CoStar's databases are not part of a repository of information generally available for free.  CoStar licenses its information services to businesses, including primarily commercial real estate brokers, asset managers, mortgage lenders, investors, owners, property managers, security analysis, REIT professionals and appraisers/mortgage underwriters.  CoStar's information licenses, among other things, enable its licensees to find for themselves or their customers available space for tenants, to match buyers to properties for sale, find tenants, research brokers, locate market-related information, and to value commercial real estate sales transactions.  CoStar's licensees can search CoStar's database by selecting from the more than 150 fields of information and analysis included in the file for each property to find those properties that suit their needs.  CoStar's licensees can search through CoStar's information in thousands of different ways to analyze various real estate markets, and thus access to CoStar's database greatly reduces the need for CoStar's licensees to spend money on conducting research to locate much of the very same information already collected, organized, developed and analyzed by CoStar.

12.     With the exception of a very limited amount of its information services CoStar makes available for no charge on the Internet at http://www.CoStar.com, access to CoStar's information services is offered only to authorized users.  Interested members of the general public can become authorized users either (a) by entering into an online agreement for *ad hoc* access and use, or (b) by entering into a written license agreement and subscribing to one or more of CoStar's information services.

13.     Access to CoStar's subscription information services and their associated databases is limited to those authorized users who gain authorization solely pursuant to written license agreements, which limit their access and use of CoStar's databases to specific numbers of licensed users and licensed sites.  Licensed users are limited to employees of the licensee, or independent contractors working out of the licensed site and exclusively for the licensee.

14.     Once a party executes a license agreement with CoStar, each of its authorized users is provided with a user identification and password and is given authorized use for Internet-based access to CoStar's subscription information services within the terms of the user's specific license.  An authorized user must input a valid user identification and password at the

15.     "Subscriber Login Area" to gain authorized access to CoStar's restricted access information services for which they are licensed.  The Subscriber Login Area contains prominent notices advising the user on each occasion of their use.  "By logging in you are agreeing to CoStar's terms of use." and "Access restricted to licensed users.  Sharing of passwords is prohibited."  The authorized user must scroll through and "accept" the applicable online Terms of Use the first time they use the product as well as at periodic intervals thereafter.  Furthermore, a warning appears at the bottom of the

homepage that reads:  "By using this site, you agree to our <u>Terms of Use</u>."  Here too, by clicking on the underlined phrase, the user can view the terms of use.

16.     The Terms of Use provide:

> By accessing or using this Site (or any part thereof), you agree to be legally bound by the terms and conditions that follow (the "Terms of Use") as we may modify them from time to time.  These Terms of Use apply to your use of this Site, including the CoStar services and products offered via the Site.  **They constitute a legal contract between you and CoStar, and by accessing or using any part of the Site you represent and warrant that you have the right, power and authority to agree to and be bound by these Terms of Use.**  If you do not agree to the Terms of Use, or if you do not have the right, power, and authority to agree to and be bound by these Terms of Use, you may not use the Site. (emphasis added).

17.     In addition, the Terms of Use specifically note that "[p]ortions of the [website] are available only to individuals or entities who purchase a subscription ('Subscribers') and who, as specified in these Terms of Use and/or in the associated written license agreement between the Subscriber and CoStar that authorizes use of the information or product(s) (the 'License Agreement'), are Authorized Users (as defined below) under such a subscription."

18.     Under the header "Prohibited Uses," the Terms of Use provide that "you shall not ... [a]ccess any portion of the [databases] unless you are an Authorized User for such [databases] using the Passcodes assigned to you by CoStar to access the components and services of the [databases] that your subscription authorizes you to access, subject to the terms contained therein and in these Terms of Use."

19.     The Terms of Use also state that "[u]pon your breach of any term of these Terms of Use or the License Agreement, CoStar's remedies shall include any monetary benefits that accrued to you as a result of the breach, any damages incurred by CoStar related to your breach and any other damages

and relief available at law or in equity."  The terms of use further provide that "CoStar shall be entitled to recover all costs, including attorney's fees."

20.     Finally, the Terms of Use provide that the user irrevocably consents to the jurisdiction of the federal and state courts located in the State of Maryland for any action to enforce these Terms of Use.

## EVENTS GIVING RISE TO THE LAWSUIT

21.     An Arizona company ("CUSTOMER") signed a License Agreement with CoStar in December 2004 for access to the CoStar COMPS® commercial real estate information database and related software.

22.     Under Sections 1, 2 and 12 of CUSTOMER's License Agreement with CoStar, CUSTOMER agreed, among other things:  (a) not to provide third parties with access to or use of the CoStar database service, (b) not to sub-license or resell CoStar's information services to others, (c) not to share the CUSTOMER-specific IDs and passwords assigned by CoStar, and (d) not to store, copy or export any portion of the licensed CoStar database service into any database or other software program, except as explicitly permitted by the CoStar-Resource License Agreement or by express written consent of CoStar.

23.     In violation of these provisions in CUSTOMER's License Agreement with CoStar, ARFFA obtained user names and passwords attributed to CUSTOMER and then used such user names and passwords improperly to access and use CoStar's commercial real estate information subscription services for ARFFA's commercial purposes without authorization from CoStar.  As a result of their illicit access to CUSTOMER's license, ARFFA did not acquire a valid license from CoStar.

24.     On February 14, 2008, CoStar suspended CUSTOMER's access to CoStar's products, which consequently stopped ARFFA's ability to gain access to CoStar's products.   CoStar then contacted CUSTOMER to inform CUSTOMER that CoStar believed that it had shared passwords unlawfully with others, including ARFFA.

25.     CoStar also contacted ARFFA directly.   ARFFA admitted that he had been using CoStar's products through CUSTOMER's account.   CoStar informed ARFFA that ARFFA's access was unauthorized under CoStar's license agreement with CUSTOMER.

26.     Despite the fact that ARFFA had specifically been informed that he could not share another company's access to CoStar, and that CoStar's license agreements are limited to single companies, upon information and belief ARFFA contacted MEISSNER shortly after ARFFA's access through CUSTOMER's account was terminated to attempt to once again gain access to CoStar's products surreptitiously.

27.     On or about March 5, 2008, MEISSNER contacted CoStar seeking to license the very same CoStar COMPS® product that ARFFA had access to through CUSTOMER's account.   After an abbreviated sales process, on March 11, 2008, MEISSNER signed a one-year contract to acquire access to CoStar COMPS® in the Phoenix and Tucson markets for a single person.   During the sales process, MEISSNER represented that she was an independent appraiser.

28.     Upon information and belief, almost immediately after CoStar provided access to MEISSNER, ARFFA began to access CoStar's products using MEISSNER's account.   Indeed, CoStar has electronic information indicating that the very same computer used by ARFFA to access CoStar through CUSTOMER's account has been used to access MEISSNER's account.

29.     By gaining unauthorized access to CoStar's products through both MEISSNER and CUSTOMER's account, ARFFA was able to make unauthorized copies and displays of CoStar's copyrighted databases and copyrighted photographs.

## COUNT I
## BREACH OF CONTRACT BY MEISSNER

30.     CoStar re-alleges and incorporates herein by reference the allegations contained in Paragraphs 1 through 30 of the Complaint.

31.     The License Agreement between MEISSNER and CoStar is a valid contract.

32.     MEISSNER breached the License Agreement by providing, either directly or indirectly, CoStar user names and passcodes to ARFFA, who is neither an employee of either MEISSNER or Twinkle Appraisal LLC nor and independent contractors working out of MEISSNER's office exclusively for MEISSNER, who then accessed and used the CoStar database service without CoStar's authorization or consent.

33.     CoStar has been injured by MEISSNER's breaches as described above.  Among other things, MEISSNER's breach of contract has caused CoStar to lose the license fee revenue associated with granting a license to ARFFA.  Some of CoStar's injury as a result of MEISSNER's breaches resulted in damages to CoStar in an amount to be proven at trial.  CoStar will not have an adequate remedy at law for its entire injury, however, as some of its injury is irreparable.  Accordingly, CoStar is entitled to damages and injunctive relief.

## COUNT II
## BREACH OF CONTRACT BY ARFFA

34.     CoStar re-alleges and incorporates herein by reference the allegations contained in Paragraphs 1 through 33 of the Complaint.

35.     By accessing CoStar's Internet website, ARFFA agreed to be bound by the terms of use agreement of CoStar's website.  CoStar's website terms of use agreement is a valid contract.

36.     ARFFA breached the terms of use agreement by, *inter alia*, accessing and using the CoStar databases through CUSTOMER's and MEISSNER's account without authorization from CoStar.

37.     CoStar has been injured by ARFFA's breaches as described above.  Among other things, ARFFA's breach of contract has caused CoStar to lose the license fee revenue associated with granting him a license to CoStar products. Some of CoStar's injury as a result of ARFFA's breach resulted in damages to CoStar in an amount to be proven at trial.  CoStar will not have an adequate remedy at law for its entire injury, however, as some of its injury is irreparable.  Accordingly, CoStar is entitled to damages and injunctive relief.

## COUNT III
## DIRECT COPYRIGHT INFRINGEMENT BY ARFFA

38.     CoStar realleges and incorporates herein by reference the allegations contained in Paragraphs 1 through 37 of the Complaint.

39.     CoStar owns valid copyrights in the compilations of data, information, and original content that form its databases of commercial real estate property information.  CoStar has registered its copyrights in those compilations with the United States Copyright Office on a regular basis.

40.     CoStar owns valid copyrights in millions of commercial real estate photographs taken by CoStar photographers.  CoStar has registered the vast majority of those photographs with the United States Copyright Office on a quarterly basis.

41.     By virtue of his unauthorized access to CoStar's products, ARFFA has been able to engage in infringement of CoStar's copyrights in its database compilations, including by reproducing,

distributing and/or displaying original and protectable expression covered by CoStar's compilation copyrights.

42.     By virtue of his unauthorized access to CoStar's products, ARFFA has infringed CoStar's copyrights in its commercial real estate photographs, including by reproducing, distributing and/or displaying such photographs.  Upon information and belief, ARFFA has infringed CoStar's copyrights in at least 381 different photographs.  A set of examples of these photographs, as well as the copyright registrations corresponding to such photographs, are attached hereto as Exhibit A.

43.     ARFFA's infringement of CoStar's copyrights was willful and with notice of CoStar's copyrights in its database compilations and its photographs.

44.     Because CoStar registered its copyrights in the database compilations and commercial real estate photographs infringed by ARFFA prior to his infringement and/or within three months of the publication of such copyrighted works, CoStar is entitled to an award of statutory damages of no less than $750 and up to $150,000 per work, as well as the attorney's fees and costs of prosecuting this action.  Based on the 381 photographs CoStar knows ARFFA has infringed, CoStar seeks statutory damages of $57,150,000.

45.     As a result of ARFFA's infringement, CoStar has suffered an injury for which there is no adequate remedy at law and that requires injunctive relief.

## COUNT IV
## CONTRIBUTORY AND VICARIOUS COPYRIGHT INFRINGEMENT BY MEISSNER

46.     CoStar realleges and incorporates herein by reference the allegations contained in Paragraphs 1 through 45 of the Complaint.

47.     As set forth in Paragraphs 38 through 45, ARFFA has infringed CoStar's copyrights.

48.     MEISSNER, by virtue of the fact that she had possession of a CoStar user name and passcode, had access to CoStar products and CoStar's Internet website.  By providing such CoStar user name and passcode to ARFFA materially contributed to ARFFA's infringement of CoStar's copyrights.

49.     MEISSNER directly or indirectly provided such CoStar user name and passcode with knowledge that ARFFA would use such user name and passcode to access CoStar's Internet website and thus infringe CoStar's copyrights.

50.     As a result of MEISSNER's conduct in facilitating and materially contributing to ARFFA's infringement of CoStar's copyrights, MEISSNER is liable for contributory copyright infringement.  MEISSNER's contributory infringement was willful.

51.     By virtue of the fact that MEISSNER had control over the user names and passcodes assigned by CoStar, MEISSNER had the right and ability to control use of that user name and passcode by ARFFA.

52.     Upon information and belief, ARFFA paid MEISSNER for the use of the CoStar user name and passcode assigned to MEISSNER, and thus MEISSNER has obtained a direct financial benefit from ARFFA's infringement of CoStar's copyrights.

53.     As a result of MEISSNER's conduct, MEISSNER is liable for vicarious copyright infringement.  MEISSNER's vicarious infringement was willful.

54.     Because CoStar registered its copyrights in the database compilations and commercial real estate photographs infringed by ARFFA prior to his infringement and/or within three months of the publication of such copyrighted works, CoStar is entitled to an award of statutory damages of no less than $750 and up to $150,000 per work, as well as the attorney's fees and costs of prosecuting this action, pursuant to 17 U.S.C. § 501 et seq.  MEISSNER is responsible for such statutory damages as a

joint tortfeasor with ARFFA.  Upon information and belief, ARFFA has infringed CoStar's copyrights in at least 109 photographs through his use of MEISSNER's user name and passwords.  Accordingly CoStar seeks statutory damages of $16,350,000 from MEISSNER as a result of her joint and several liable for ARFFA's infringement.

55.     As a result of MEISSNER's infringement, CoStar has suffered an injury for which there is no adequate remedy at law and that requires injunctive relief.

### COUNT V
### FRAUD BY ARFFA AND MEISSNER

56.     CoStar realleges and incorporates herein by reference the allegations contained in Paragraphs 1 through 55 of the Complaint.

57.     As alleged above, on information and belief, MEISSNER obtained its license to make authorized access to CoStar's database by fraud and deceit when it failed to identify the true purposes it intended to make of the authorized user identification and passcode it was provided pursuant to the License Agreement.  MEISSNER made representations to CoStar and its employees and agents that it would limit its use of the licensed CoStar products to its employees or independent contractors working exclusively for MEISSNER.

58.     ARFFA accessed CoStar's database and products by fraud and deceit when he identified himself as MEISSNER by using the user name and passcode assigned to MEISSNER by CoStar.  Had CoStar been aware that ARFFA was using MEISSNER's user name and passcode, CoStar would have denied such access.

59.     Defendants' fraudulent conduct, has been improper, willful, wanton and/or in reckless disregard of CoStar's rights.  Defendants have been unjustly enriched as a result of their unauthorized access.  Defendants' conduct has harmed and will continue to harm CoStar.  As a result, CoStar has

suffered and will continue to suffer losses and irreparable injury, in amounts not yet ascertained. CoStar's remedy at law is not itself adequate to compensate it for injuries inflicted by Defendants. Accordingly, CoStar is entitled to damages and injunctive relief.

**COUNT VI**
**VIOLATION BY OF § 18 U.S.C. 1030:**
**FRAUD AND RELATED ACTIVITY IN CONNECTION WITH COMPUTERS**

60.     CoStar realleges and incorporates herein by reference the allegations contained in Paragraphs 1 through 59 of the Complaint.

61.     The computer system on which CoStar's databases reside is a computer used in interstate commerce or communication, and is thus a protected computer under 18 U.S.C. § 1030.

62.     When ARFFA accessed the password-protected portions of the CoStar Internet website, ARFFA intentionally accessed a protected computer without authorization.

63.     ARFFA's unauthorized access of a protected computer has caused damage to CoStar that has amounted in an aggregated loss of over $5,000 during a one-year period.

64.     ARFFA's conduct has harmed and will continue to harm CoStar.  As a result, CoStar has suffered and will continue to suffer losses, damages, and irreparable injury, in amounts not yet ascertained. CoStar's remedy at law is not itself adequate to compensate it for injuries inflicted by ARFFA.  Accordingly, CoStar is entitled to damages and injunctive relief.

**PRAYER FOR RELIEF**

    **WHEREFORE,** CoStar asks that this Court:

(1)     Enter a judgment against ARFFA and MEISSNER that they have breached their contracts with CoStar;

(2)     Grant a preliminary and permanent injunction (a) restraining and enjoining Defendants and any of their principals, officers, agents, servants, employees, attorneys, successors and assigns, and all persons in active concert or participation with them, from (i) making any unauthorized access to or use of any CoStar database service, (ii) interfering with CoStar's current or prospective contracts pertaining to use and access of any CoStar's database, and (iii) assisting, aiding, or abetting any other person or business entity in engaging in or performing any of the activities referred to in subparagraphs (i) through (ii) above; and (b) ordering Defendants and any of their principals, officers, agents, servants, employees, attorneys, successors and assigns, and all persons in active concert or participation with them, to permanently delete and destroy all portions of any CoStar database service within their possession, and within ten (10) days provide CoStar with a signed affidavit certifying completion of such deletion/destruction;

(3)     Enter judgment against Defendants and in favor of CoStar for disgorgement of any amounts by which they was unjustly enriched;

(4)     Enter judgment against Defendants and in favor of CoStar for compensatory damages in an amount to be determined at trial;

(5)     Enter judgment against Defendants and in favor of CoStar for punitive damages in an amount to be determined at trial.

(6)     For an award of statutory damages of up to $150,000 per copyrighted work as a result of Defendants' willful infringement of CoStar's copyrights.

(7)     For an award of the costs of this action, including reasonable attorneys' fees, pursuant to 17 U.S.C. § 505 and other applicable laws.

(6)     Enter judgment against Defendants and in favor of CoStar for prejudgment interest, costs and attorneys' fees; and

(7)     Grant CoStar such other and further relief as is just.


Dated:  October 21, 2008                              Respectfully submitted,


                                    _____/s/_____
                                    Shari Ross Lahlou, Bar. No. 16570
                                    William J. Sauers, Bar No. 17355
                                    Crowell & Moring LLP
                                    1001 Pennsylvania Avenue, N.W.
                                    Washington, D.C. 20004
                                    Telephone (202) 624-2500
                                    Facsimile (202) 628-5116

                                    Attorneys for Plaintiffs CoSTAR REALTY
                                    INFORMATION, INC., a Delaware Corporation,
                                    and CoSTAR GROUP, INC., a Delaware
                                    Corporation

**EXHIBIT A**

| # | Photograph Address | Registration Number | Registration Date |
|---|---|---|---|
| 1 | 1873-1885 N. Kolb Road, Tuscon, AZ 85715 | VA 1-386-378 | 10/19/2006 |
| 2 | 6638 E. Baseline Rd., Mesa, AZ 85206 | VA 1-403-884 | 5/11/2007 |
| 3 | 895 W. Grant Rd., Tucson, AZ 85711 | VA 1-636-030 | 11/15/2007 |
| 4 | 2701 N. Campbell Ave., Tucson, AZ 85719 | VA 1-421-736 | 7/2/2007 |
| 5 | 1430 N. 6th Ave. Tucson, AZ 85705 | VA 1-636-030 | 11/15/2007 |
| 6 | 3708-3712 S. 6th Ave., Tucson, AZ 85713 | VA 1-375-599 | 9/13/2006 |