IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
GREENBELT DIVISION

| | |
|---|---|
| COSTAR REALTY INFORMATION and COSTAR GROUP, INC., <br><br> Plaintiffs, <br><br> v. <br><br> DAVID ARFFA and ROBIN MEISSNER <br><br> Defendants. | Civil Action No. 8:08-CV-2766-DKC |

**PLAINTIFFS' OPPOSITION TO DEFENDANT MEISSNER'S
MOTION TO DISMISS IMPROPER PARTY AND MOTION TO DISMISS FOR LACK OF
<u>PERSONAL JURISDICTION OR ALTERNATIVELY TO TRANSFER VENUE</u>**

Plaintiffs CoStar Realty Information and CoStar Group, Inc. (collectively, "CoStar"), by their attorneys, submit this Memorandum in Opposition to the Motion to Dismiss [for] Improper Party and Motion to Dismiss For Lack of Personal Jurisdiction or, Alternatively, to Transfer Venue [D.E. 6] to the District of Arizona pursuant to 28 U.S.C. § 1404 filed by Defendant Robin Meissner ("Meissner"). For the reasons set forth below, Meissner's motions should be denied in their entirety.

<u>INTRODUCTION AND SUMMARY</u>

CoStar's allegations and the attached declaration provide a more than ample basis to support the Court's exercise of personal jurisdiction over Meissner and, for the same reasons, the Court should deny Meissner's attempt to transfer this case to Arizona. Moreover, Meissner is a property party to this litigation based on a long line of intellectual property and related precedent establishing liability for

individuals who are personally engaged in infringing conduct, as well as breaches of contract that they personally executed.

**Meissner Is a Proper Party.** Meissner's attempt to dismiss herself as an "improper party" fails on two accounts. In the first instance, Meissner disregards the cardinal rule that, for the purposes of Rule 12(b)(6) motions, all well pleaded allegations of a complaint are accepted as true. *See Edge Partners, L.P. v. Dockser*, 944 F. Supp. 438, 440 (D. Md. 1996). Instead, Meissner submits her own declaration and pointedly disputes CoStar's factual allegations. That effort is improper per se for a motion to dismiss. *See Alexander v. Sports Auth. Inc.*, 2007 U.S. Dist. LEXIS 43317 at *6 (D. Md. June 14, 2007) (contrary assertions of moving party must be disregarded); *Jordan v. Wash. Mut. Bank*, 211 F. Supp. 2d 670 (D. Md. 2005) (matters outside the complaint should not be considered for the purposes of ruling on a Rule 12(b)(6) motion).

More fundamentally, however, Meissner simply fails to recognize the wealth of precedent that she can be held personally liable for the conduct she personally engages in, regardless of whether she cloaks herself in the corporate form. Because CoStar alleges that Meissner personally was involved in the unlawful conduct – in this case, breach of contract, copyright infringement, and fraud – she is subject to personal liability. *See Microsoft Corp. v. Md. Micro.com, Inc.*, 2003 U.S. Dist. LEXIS 13735, *13-14 (D. Md. July 15, 2003) (personal liability for copyright infringement appropriate where defendant personally engaged in infringing acts or met standard of secondary liability); *Steigerwald v. Bradley*, 229 F. Supp. 2d 445, 451 (D. Md. 2002) (personal liability for fraud appropriate where defendant personally committed the fraud).

**The Court Has Personal Jurisdiction Over Meissner**. Meissner's motion completely ignores CoStar's allegations, as set forth in Paragraphs 13-16, 20, and 27, that Meissner has <u>specifically</u>

consented to the Court's jurisdiction and the District of Maryland as a venue. Instead, Meissner would have the Court simply disregard CoStar's allegations – which much be accepted as true for the purposes of this Motion – and adopt Meissner's own statements.

The allegations of CoStar's Complaint plainly support the exercise of personal jurisdiction. When Meissner first logged on to CoStar's website with the user name and password provided to her, she had to click "I Accept" to CoStar's Terms of Use, which contained a forum and venue selection clause and consent to jurisdiction in this Court. *See* Complaint at ¶¶ 14, 15, 20. It is beyond dispute at this point that such forum selection clauses are enforceable. *See M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10 (1972); *Allen v. Lloyd's of London*, 94 F.3d 923, 928 (4th Cir. 1996). Accordingly, the Court has personal jurisdiction over Meissner. Judge Messitte has specifically upheld and enforced CoStar's choice of forum and venue clause in another case involving similar facts. *See* Exh. A, Transcript of Hearing Before Judge Messitte, *CoStar Realty Information, Inc. v. Atkinson Hunt*, Case No. PJM 06-655 (August 28, 2006) ("Atkinson Tr.") at 37-44.

Moreover, even if Meissner had not specifically consented to jurisdiction in Maryland as a result of her acceptance of CoStar's Terms of Use, her tortious activity – providing illegal access to CoStar's password-protected services – was directed at and occurred in Maryland, where CoStar's computers and Internet servers are located. *See* Complaint at ¶ 9, 27, 28. Thus, under black-letter law providing that jurisdiction lies where a tort is committed and where a defendant has "purposefully directed" its activities towards Maryland, this Court has personal and specific jurisdiction over Meissner because of her tortious conduct in Maryland. *See, e.g.*, *Giannaris v. Cheng*, 219 F. Supp. 2d 687, 692-93 (D. Md. 2002).

**The District of Maryland Is the Proper Venue for This Case**.  As noted with respect to the personal jurisdiction of this Court over Meissner, Meissner specifically agreed to CoStar's Terms of Use, which selects this Court as the venue for any disputes between the parties.  As such, her transfer of venue motion should be denied outright.  Moreover, even if a full analysis were conducted under the standards of Section 1404, the convenience of the parties and the interest of justice suggest that this case remain before the Court.

## FACTUAL BACKGROUND

Headquartered in Maryland, CoStar is a leading, national, commercial real estate information services provider.  *See* First Amended Complaint at ¶¶ 1, 2, 10.  This case arises out of Defendants' unauthorized use of CoStar's services, fraudulent representations and contract violations.  *See id.* at ¶¶ 21-29.

CoStar's suite of proprietary, web-accessed information services help commercial real estate professionals, such as brokers, owners, lenders, appraisers, and REITs, to understand market conditions and identify and evaluate specific opportunities.  *Id*. at ¶ 11.  CoStar invests enormous effort and expense in building and maintaining its services, employing a research force of several hundred individuals located in Maryland alone.  *Id*. at ¶ 10.  CoStar's computer servers, which host its database, are house in Bethesda, Maryland.  *Id.* at ¶ 9.  CoStar licenses its products to businesses pursuant to written license agreements for use by a designated number of individuals that are employees for those businesses at a site designated in the CoStar license agreement.  *Id.* at ¶¶ 13.  The CoStar license agreement prohibits password sharing of any kind and sets forth certain permitted and prohibited uses of the CoStar service and the content obtained therefrom.  *Id.* at ¶¶ 18.  Furthermore, CoStar's login web

page, as well as its web site Terms of Use, specifically reference the prohibition on logins by unauthorized users. *See id.* at ¶¶ 15, 18.

Meissner signed a one-year, single-user contract to acquire access to CoStar's COMPS® commercial real estate information database in the Phoenix and Tucson markets. *Id.* at ¶¶ 21, 27. During the sales process, Meissner represented that she was an independent appraiser. *Id.* at ¶ 27. Almost immediately after CoStar provided access to Meissner, Defendant David Arffa ("Arffa") began to access CoStar's products using Meissner's account. *Id.* at ¶ 28. In addition, Arffa paid Meissner for the use of the CoStar user name and passcode assigned to Meissner. *Id.* at ¶ 52.

As alleged in the First Amended Complaint, in order to access CoStar's services, Meissner was required to indicate her acceptance of CoStar's Terms of Use when she first logged into CoStar's website, as well as at periodic intervals thereafter. *See id.* at ¶¶ 14, 15. Moreover, each subsequent time Meissner logged into CoStar's website, she was presented with a prominent notice advising them that "By using this site, you are agreeing to CoStar's terms of use." *Id.* ¶ 15.

CoStar's Terms of Use provide that the user "irrevocably consent[s] to the jurisdiction of the federal and state courts located in the State of Maryland . . . for any action brought against you in connection with these Terms of Use or Use of the Product.." Exh. B, Declaration of Steven Williams ("Williams Decl."), Ex. 1 (Terms of Use) 11.

## LEGAL STANDARDS

**1.** **Personal Jurisdiction.** A federal district court may exercise personal jurisdiction over a non-resident defendant where an applicable state long-arm statute confers jurisdiction and the assertion of that jurisdiction is consistent with constitutional due process. *Stratagene v. Parsons Behle & Latimer*, 315 F. Supp. 2d 765, 768 (D. Md. 2004) (citing *Nichols v. G.D. Searle & Co.*, 991 F.2d 1195, 1199

(4th Cir. 1993)). Because the Maryland legislature designed its long-arm statute to extend personal jurisdiction to the limits allowed by federal due process, "the statutory inquiry necessarily merges with the constitutional inquiry, and the two inquiries essentially become one." *Ciena Corp. v. Jarrard*, 203 F.3d 312, 317 (4th Cir. 2000) (citation and quotations omitted). Under the due process clause of the Fourteenth Amendment, defendants are subject to a Court's jurisdiction if they have had sufficient minimum and purposeful contacts with Maryland that gave rise to the suit. *See Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 474, 105 S.Ct. 2174, 2183 (1985).

"When the Court rules on a motion to dismiss for lack of personal jurisdiction without the benefit of an evidentiary hearing, the plaintiff's burden is 'simply to make a prima facie showing of a sufficient jurisdictional basis in order to survive the jurisdictional challenge.' The Court, however, must construe all relevant pleadings and inferences in favor of the plaintiff." *Baker & Kerr, Inc. v. Brennan*, 26 F. Supp. 2d 767, 769 (D. Md. 1998) (Williams, J.).

  **2.**  **Rule 12(b)(6).** For purposes of a Rule 12(b)(6) motion, all allegations in the complaint are deemed true and all contravening allegations are deemed untrue. Meissner must show beyond doubt that CoStar can allege no set of facts entitling it to relief. *Edge Partners, L.P. v. Dockser*, 944 F. Supp. 438, 440 (D. Md. 1996). Matters outside the pleadings are not properly considered on a motion to dismiss. *Jordan v. Wash. Mut. Bank*, 211 F. Supp. 2d 670 (D. Md. 2005).

  **3.**  **Motion to Transfer Venue.** As the Court recently stated in *Mamami v. Sanchez de Lozada Sanchez Bustamante*, 2008 WL 1752985, *2 (D. Md. Apr. 15, 2008):

> The standards for transfer under § 1404 are: "(1) the transferee court must be a court in which the action could have been brought initially; (2) the transfer must be convenient to the parties and witnesses; and (3) the transfer must be in the interest of justice." *Dow v. Jones,* 232 F. Supp. 2d 491, 499 (D. Md. 2002). In deciding a motion to transfer venue under § 1404(a), the court must "weigh in the balance a number of case-specific factors." *Stewart Org., Inc. v. Ricoh Corp.,* 487 U.S. 22, 29, 108 S.Ct. 2239, 101 L.Ed.2d 22

(1988). Courts are to consider the following factors: (1) the weight accorded to plaintiff's choice of forum; (2) witness convenience and access; (3) convenience of the parties; and (4) the interests of justice. *Cross v. Fleet Reserve Ass'n Pension Plan,* 383 F. Supp. 2d 852, 856 (D. Md. 2005). However, unless the balance of factors "is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *Collins v. Straight Inc.,* 748 F.2d 916, 921 (4th Cir. 1984). The decision whether to transfer venue is committed to the sound discretion of the trial court. *See Brock v. Entre Computer Centers, Inc.,* 933 F.2d 1253, 1257 (4th Cir. 1991).

## ARGUMENT

### I. MEISSNER IS A PROPER PARTY TO THIS LAWSUIT

Defendant Meissner's motion attempts to ignore the actual allegations of CoStar's Complaint, which plainly make allegations concerning Meissner's *individual* conduct, and instead introduces Meissner's own declaration denying the allegations of CoStar's Complaint, in which Meissner claims that it was her limited liability company – of which she is the only member – that actually performed the acts alleged by CoStar, and not she personally who performed those acts. D.E. 6-2 at ¶ 5; *see also* D.E. 6 at 3-4. In the first instance, Meissner's motion violates the cardinal rules of Rule 12(b) – all well pleaded allegations of a Complaint are accepted as true and a defendant cannot rely on materials outside the Complaint to support a Rule 12(b) motion. More fundamentally, however, Meissner's motion fails to recognize the fact that CoStar has not misplaced its allegations; it was the flesh and blood *Meissner* that gave out access to CoStar's products; it was *Meissner* who committed fraud on CoStar by saying that the account was for her use only; it was *Meissner* who clicked "I accept" to CoStar's Terms of Use and then breached those terms of use by handing over access to her user account. As courts have held in an unbroken line of precedent, individuals can be called to task for their individual actions.

### A. Meissner's Motion Improperly Attempts to Contradict the Allegations of Plaintiff's Complaint by Bringing in Evidence Outside Plaintiff's Complaint.

Meissner's attempt to dismiss herself as an "improper party" fails in the first instance because her motion does not accept CoStar's allegations as true and attempts to bring in facts outside CoStar's Complaint. As a matter of black letter law, for the purposes of a Rule 12(b)(6) motion to dismiss, the Court must "consider all well-pled allegations in a complaint as true" and "must disregard the contrary allegations of the opposing party." *Alexander v. Sports Auth. Inc.*, 2007 U.S. Dist. LEXIS 43317 at *6 (D. Md. June 14, 2007). However, Meissner's motion is simply a recitation of her *own* allegations (in the form of an attached declaration) that all of the conduct CoStar alleges is attributable to her is actually attributable to her LLC, Twinkle Appraisal. D-E 6 at 3-4. Her motion even states that "contrary to the assertions of CoStar . . ." and then cites Meissner's own declaration. *See id*. at 3. Because Meissner's motion on this point is simply an effort to dispute CoStar's allegations, it is inappropriate as a matter of law for a Rule 12(b)(6) motion and can be denied on those grounds alone.[1]

### B. CoStar's Complaint Makes Allegations Concerning Meissner's Personal Conduct, for Which She Can Be Held Personally Liable

CoStar's Complaint contains three different counts against Meissner: (1) Breach of Contract (Count I); Contributory and Vicarious Copyright Infringement (Count IV); and Fraud (Count V). Each of these counts, and the allegations incorporated therein, plainly allege that Meissner personally engaged in the unlawful conduct. CoStar did not make these allegations lightly; it believes that Meissner is

---

[1] To the extent that Meissner or the Court would convert Meissner's motion to one for summary judgment under Fed. R. Civ. 56, CoStar would request leave of the Court to brief such motion fully, as well as conduct the discovery needed to test Meissner's factual claims. In any case, CoStar is already aware of facts that tend to discredit Meissner's allegations; Meissner paid for her CoStar account with a credit card assigned to her personally and issued to her home address. There is thus the substantial probability that, should CoStar actually be required to pierce Meissner's corporate veil, it would ground such assertion on the fact that Twinkle Appraisal is a mere "alter ego" of Meissner.

personally responsible for violating CoStar's rights, not her sham corporate shell. As such, CoStar's allegations against Meissner support a claim for relief against her and therefore she is a proper party to this lawsuit.

*First,* with respect to the breach of contract claim against Meissner, CoStar's Complaint plainly alleges that Meissner personally entered into and breached her contract with CoStar. *See* Complaint at ¶¶ 27-28. While Meissner may dispute such allegations, the Rule 12(b)(6) phase requires that she accept such allegations as true. Moreover, CoStar makes further allegations that Meissner personally accepted CoStar's Terms of Use – separate from any corporate entity she make hide behind – and breached those Terms of Use by providing access to CoStar's products to a third party. *See* Complaint at ¶¶ 14-15; 32-33.

*Second*, with respect to the contributory and vicarious copyright claim alleged against Meissner, it is well established that "an individual, including a corporate officer, who has the ability to supervise infringing activity and has a financial interest in that activity, or who personally participates in that activity is personally liable for the infringement." *Southern Bell Tel. & Tel. Co. v. Associated Tel. Directory Publrs.*, 756 F.2d 801, 811 (11th Cir. 1985) (quoting *Lauratex Textile Corp. v. Allton Knitting Mills, Inc.*, 517 F. Supp. 900, 904 (S.D.N.Y. 1981)). *See Microsoft Corp. v. Md. Micro.com, Inc.*, 2003 U.S. Dist. LEXIS 13735, *13-14 (D. Md. July 15, 2003) (same). *See also Dae Han Video Production, Inc. v. Chun***,** 17 U.S.P.Q.2D (BNA) 1306, 1990 U.S. Dist. LEXIS 18496, *26 (E.D. Va. 1990) (following *Lauratex*); *United Feature Syndicate, Inc. v. Sunrise Mold, Inc.*, 569 F. Supp. 1475 (S.D. Fla. 1983); *Stewart v. Southern Music Distributing Co.*, 503 F. Supp. 258 (M.D. Fla. 1980). *See generally* 3 Melville B. Nimmer [*13] & David Nimmer, *Nimmer on Copyright* § 12.04[A][3][d] (2003). CoStar plainly alleges the necessary elements against Meissner – she had the ability to control the third party's

infringement of CoStar's copyrights, and had a financial interest in the third party's infringement. *See* Complaint at ¶¶ 51-52.

*Third*, with respect to CoStar's fraud claim against Meissner, that claim is indisputably related to Meissner's *personal* conduct. As Judge Blake stated in *Steigerwald v. Bradley*, 229 F. Supp. 2d 445, 451 (D. Md. 2002), a case involving personal liability against a corporate representative for fraud:

> The Court of Appeals of Maryland has consistently held that "corporate officers or agents are personally liable for those torts which they personally commit . . . even though performed in the name of an artificial body." *Tedrow v. Deskin,* 265 Md. 546, 290 A.2d 799, 802 (Md. 1972). To hold an officer personally liable, he must have "personally directed or actively participated or cooperated in the tort committed by the corporation." *Shipley v. Perlberg,* 140 Md. App. 257, 780 A.2d 396, 401 (Md. Ct. Spec. App. 2001) (quoting *Fletcher v. Havre de Grace Fireworks Co.,* 229 Md. 196, 177 A.2d 908 (Md. 1962)).

In this case, CoStar alleged that Meissner *personally* obtained a license from CoStar under false pretenses, even if she did so in a corporate name. *See* Complaint at ¶¶ 26-27, 57.[2] Under Maryland law, Meissner can thus can be held personally liable for her conduct.

## II. THE COURT HAS PERSONAL JURISDICTION OVER MEISSNER

### A. As Set Forth in the Complaint, Meissner Has Consented to This Court's Jurisdiction with Respect to Disputes with CoStar

As CoStar alleges in its Complaint, Meissner has specifically consented to the Court's jurisdiction over her by accepting CoStar's online Terms of Use, which contains a forum selection clause. That forum selection clause, like other forum selection clauses, has been specifically upheld in this District as a valid basis for asserting jurisdiction and should once again be enforced to allow the Court to exercise personal jurisdiction over Meissner. *See* Exh. A, Atkinson Tr. at 37-44.

---

[2] Indeed, as Meissner admits in her declaration (D.E. 6-2 at ¶ 11), she is the sole person operating Twinkle Appraisals, and thus is the only possible person to which the fraud could be attributed.

There is no question that Meissner has agreed to CoStar's online Terms of Use. Each person that uses a CoStar user name and password on CoStar's website for the first time is presented with a copy of CoStar's online Terms of Use and is asked to click "I Accept" to those terms before using CoStar's service. Complaint at ¶ 15; Williams Decl. at ¶ 3. Furthermore, each user is periodically required to click "I Accept" to CoStar's Terms of Use, further indicating their assent. Complaint at ¶ 15; Williams Decl. at ¶ 3. CoStar's records show that a person or persons using a user name assigned to "Robin Meissner" logged on to CoStar's website on a number of occasions and accordingly would have had to indicate their acceptance to CoStar's Terms of Use. Williams Decl.") at ¶ 5. The kind of assent that Meissner would have had to have made to use CoStar's services is sufficient for the purposes of Maryland contract law. *See Koch v. America Online, Inc.*, 139 F. Supp. 2d 690, 693-95 (D. Md. 2000).

Given her acceptance of CoStar's Terms of Use, the Court's personal jurisdiction over Meissner naturally follows. The Terms of Use state:

**Jurisdiction**

CoStar is headquartered in the State of Maryland of the United States. These Terms of Use and your use of this Product shall be governed by the laws of the State of Maryland without regard to its conflicts of laws principles. The federal and state courts located in the State of Maryland shall be the exclusive jurisdiction for any action brought against CoStar in connection with these Terms of Use or use of the Product. <u>You irrevocably consent to the jurisdiction of the federal and state courts located in the State of Maryland,</u> and to the jurisdiction of the federal and state courts located in any State where you are located, <u>for any action brought against you in connection with these Terms of Use or use of the Product</u>.

Exh. B, Williams Decl., Exh. 1 (emphasis added).[3] It cannot be disputed at this point that a forum selection clause like this is valid and an appropriate basis upon which this Court can exercise personal

---

[3] Oddly, Meissner focuses on the provision consenting to jurisdiction where the user is located. D.E. 6 at 10. That argument, of course, simply ignores the consent to jurisdiction in Maryland granted by Meissner in the next sentence.

jurisdiction. *See Koch*, 139 F. Supp. 2d at 692-95 (enforcing forum selection clause contained in AOL's online terms of service); *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 33 (1988) ("[a] valid forum selection clause [should be] given weight in all but the most exceptional cases."); *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10 (1972) (forum selection clauses "are prima facie valid and should be enforced . . ."); *Allen v. Lloyd's of London*, 94 F.3d 923, 928 (4th Cir. 1996) (noting that the "Supreme Court has consistently accorded choice of forum and choice of law provisions presumptive validity"). Indeed, Judge Messitte found jurisdiction over a defendant based on essentially identical allegations involving CoStar's Terms of Use. *See* Exh. A, Atkinson Tr. at 38-39. Because Meissner does not provide the Court with any reason not to honor the forum selection clause of CoStar's Terms of Use, the clause should be honored and her motion should be denied.

      **B.    Personal Jurisdiction over Meissner Is Appropriate Because She Has Committed Tortious Acts in Maryland and Because She Has Purposefully Directed Her Conduct at Maryland**

Even if there were some reason not to enforce the forum selection clause – which, as discussed above, there is not – the Court should still find that it may exercise personal jurisdiction over Meissner. It is axiomatic that a federal district court may exercise personal jurisdiction over a non-resident defendant where an applicable state long-arm statute confers jurisdiction and the assertion of that jurisdiction is consistent with constitutional due process. *Stratagene v. Parsons Behle & Latimer*, 315 F. Supp. 2d 765, 768 (D. Md. 2004) (citing *Nichols v. G.D. Searle & Co.*, 991 F.2d 1195, 1199 (4th Cir. 1993)). Meissner's contacts with Maryland are such that at all times relevant to this case they should have reasonably anticipated being haled into court here. *Id.* (citations omitted).

Meissner should not be permitted to claim that she had no reason to believe that her conduct implicated Maryland jurisdiction. Maryland's long-arm statute confers specific jurisdiction, among

other things, where a party transacts business in the state or causes tortious injury in the state. Md. Code Ann. § 6-103(b)(1), (3) and (4). Here, there are contracts that Meissner was directly a party to (the Terms of Use and the license agreement) and she knew she was using CoStar's computers, which are, quite naturally, located in Maryland with CoStar. *See* Complaint at ¶¶ 13-15, 9.

As the Court is aware, the fact that a defendant has never set foot in a jurisdiction, as Meissner apparently claims (D.E. 6-2 at ¶ 3), is not a determining factor in a court's exercise of personal jurisdiction. *Burger King*, 471 U.S. at 476. Rather, the question is whether Meissner has directed her activities at forum residents such that they would have fair warning that they might be subject to the forum's jurisdiction. *Id*. at 472 (citations omitted); *Cole-Tuve, Inc. v. Amer. Machine Tools Corp.*, 342 F. Supp. 2d 362, 370 (D. Md. 2004) (foreign defendants who intentionally harm residents of the forum state subject to personal jurisdiction); *Giannaris v. Cheng*, 219 F. Supp. 2d 687, 692-93 (D. Md. 2002) ("strongest factor" in deciding whether personal jurisdiction is based upon business activities directed at forum residents, is whether defendant initiated contact with forum residents).

Here, there is little question that Meissner directed their activities at Maryland. Meissner improperly provided access to CoStar's Maryland computer servers to a third party and directed her improper conduct at CoStar, which is headquartered in Maryland and which suffered damages in Maryland due to Defendant's conduct. Moreover, as discussed in the accompanying declaration of Steve Williams, Meissner made phone calls to CoStar's Bethesda, Maryland headquarters, seeking to license CoStar's products. *See* Exh. B, Williams Decl. at ¶¶ 6-7. Even the contact information on CoStar's website directs users to CoStar in Bethesda, Maryland. *See* http://www.costar.com/Contacts/. In sum, Meissner's efforts involved computer servers located in Maryland and CoStar's Maryland personnel. Meissner transacted business in Maryland by accepting the Terms of Use on CoStar's

website, thereby forming a contract with CoStar each time they accessed the website (*see* Complaint ¶¶ 14-15, 27), and by initiating communications with CoStar regarding the use of CoStar's services (*see* Exh. B, Williams Decl. at ¶¶ 6, 7). *See Giannaris*, 219 F. Supp. 2d at 693; *see also Potomac Design, Inc. v. Eurocal Trading, Inc.*, 839 F. Supp. 364, 369-70 (D. Md. 1993). Furthermore, Meissner's facilitation of a third party's unauthorized use of CoStar's website was intended to cause tortious injury to CoStar in Maryland. *See Cole-Tuve*, 342 F. Supp. 2d at 36l. Thus, there are ample reasons to exercise personal jurisdiction over Meissner with regard to this lawsuit.

### III. THIS DISTRICT IS THE MOST APPROPRIATE VENUE IN WHICH TO LITIGATE THIS ACTION

#### A. Venue Is Proper In Maryland

Contrary to Meissner's contention (D.E. 6 at 12-13), venue is proper in Maryland. As an initial matter, venue for claims asserted under the Copyright Act is proper in the district where the defendant "may be found." 28 U.S.C. § 1400(a). It is "widely accepted that a defendant is found within the meaning of Section 1400(a) wherever the defendant is . . . subject to personal jurisdiction." Wright, *et al.*, 14D *Federal Practice and Procedure* § 2819. Because, as explained above, exercise of personal jurisdiction in Maryland over Meissner is proper, venue is also proper in Maryland for all the same reasons set forth above. *See Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 243 F. Supp. 2d 1073, 1097 (C.D. Cal. 2003). Moreover, an action, such as this one, in which jurisdiction is based upon federal question jurisdiction, may be brought in a judicial district where "a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated." 28 U.S.C. § 1391(b)(2); *see Shropshire v. Fred Rappaport Co.*, 294 F. Supp. 2d 1085, 1094 (N.D. Cal. 2003) (holding venue for copyright claim was proper under § 1391(b)). That Meissner is physically located in Arizona is not determinative – her facilitation of the illegal access to

CoStar's password-protected services and copyrighted photographs occurred in Maryland, where CoStar's computers and internet servers are located. *See* Complaint ¶ 9. Venue is therefore proper in this Court, and this case should not be transferred or dismissed on venue grounds.[4]

B. **Meissner's Motion for a Venue Transfer Should Be Denied Because This District Is the Most Appropriate Forum to Litigate This Action**

Meissner's motion for a transfer of venue should be denied because the factors considered under § 1404 weigh decidedly against transfer. *Dow v.* [5]*Jones*, 232 F. Supp. 2d 491, 499 (D. Md. 2002) (quoting *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947)) (unless the balance is strongly in favor of transfer, the plaintiff's choice of forum will rarely be disturbed). In weighing whether to transfer under § 1404, courts consider: "1) the weight accorded the plaintiff's choice of venue; 2) witness convenience and access; 3) convenience of the parties, and 4) the interest of justice." *Cross v. Fleet Reserve Assoc. Pension*, 383 F. Supp. 2d 852, 856 (D. Md. 2005) (citing *Lynch v. Vanderhoef Builders*, 237 F. Supp. 2d 615 (D. Md. 2002)).

1. **The Forum Selection Clause of the Agreement Between CoStar and Meissner Mandates That This Case Be Heard in Maryland.**

As noted in detail above, Meissner specifically consented to the jurisdiction of the state and federal courts of Maryland by accepting CoStar's Terms of Use. Accordingly, Meissner's motion to transfer should be denied on the grounds of the existence of that forum selection clause, which waives any right he would have to challenge the convenience of Maryland as a forum. *See, e.g., Capital Source*

---

[4] It is CoStar's position that venue for a claim arising under the Copyright Act is proper under both 28 U.S.C. § 1391, as it alleges in its Complaint (¶ 7), and under 28 U.S.C. § 1400(a). If the Court wishes, CoStar can readily submit an amended complaint that includes 28 U.S.C. § 1400(a) as an additional basis for venue.

[5] While Meissner cites to 28 U.S.C. 1404(a) in its motion (D.E. 6 at 1), her supporting memorandum does not contain any argument or authorities with respect to that section. Nevertheless, as demonstrated herein, any such argument would fail.

*Finance, LLC v. Delco Oil, Inc.*, 2007 WL 3119775, *10-11 (D. Md. Sep 17, 2007); *Davis Media Group, Inc v. Best Western Interntl., Inc.*, 302 F. Supp. 2d 464, 470 (D. Md. 2004) (enforcing forum selection clause in context of motion to transfer venue to protect the parties' legitimate expectations).

### 2. CoStar's Choice of Forum Is Entitled to Substantial Weight.

A plaintiff's choice of forum is entitled to substantial weight by a court in determining whether transfer is appropriate under § 1404. *Cross*, 383 F. Supp. 2d at 856. This is especially true where, as here, events giving rise to the litigation took place in the forum. *Cole-Tuve, Inc. v. Amer. Machine Tools Corp.*, 342 F. Supp. 2d 362, 370 (D. Md. 2004) (plaintiff's choice of forum accorded "considerable weight" where defendant's online activities giving rise to litigation affected plaintiff's business in Maryland). Here, Meissner's unlawful distribution of CoStar's services directly affected CoStar's business in Maryland requiring that substantial deference be paid to CoStar's choice of forum. *See* First Amended Complaint at ¶¶ 13-14.

### 3. The Inconvenience to CoStar, its Witnesses, and Other Parties Weighs against Transfer.

Also to be considered by the Court in determining whether to transfer is the convenience of the parties and the witnesses. CoStar and its witnesses will suffer inconvenience if required to travel to the District of Arizona to litigate this case. As detailed in the Declaration of Steve Williams, CoStar and all the witnesses that may testify in this litigation reside in Maryland and will be inconvenienced by litigation in Texas. *See* Exh. B, Williams Decl. at ¶ 10; *Cole-Tuve*, 342 F. Supp. 2d at 370 (courts will not impose burden of litigating in an different forum upon a plaintiff where only connection with proposed transferee forum is that defendants reside there).[6] At the very least, the convenience issue is "a wash" between the parties which weighs in favor of keeping this case in Maryland. *Choice Hotels*

16

*Internat'l, Inc. v. Madison Three, Inc.*, 23 F. Supp. 2d 617, 622 (D. Md. 1998) (denying transfer and reasoning that "there has been no substantial showing by defendant that a transfer . . . would do anything other than shift the greater burden and inconvenience of trial from defendants to plaintiffs, which is not a proper purpose of a transfer of venue.").

Finally, out of respect for convenience to Meissner, CoStar is willing to offer to take any deposition of Meissner near her place of business.

### 4. The Interests of Justice Weigh Against Transfer.

Courts also look to the interests of justice on a § 1404 motion which encompasses "'all those factors bearing on transfer that are unrelated to convenience of witnesses and parties.'" *Cross*, 383 F. Supp. 2d at 857 (quoting *Sheet Metal Workers Fund v. Baylor Heating and Air Conditioning, Inc.*, 702 F. Supp. 1253, 1260 (E.D. Va. 1988)). These factors include, as is relevant here, a court's familiarity with applicable law, the possibility of an unfair trial or harassment, ease of access to sources of proof and court congestion. *Id.*; *Baylor Heating and Air Conditioning*, 702 F. Supp. at 1260. Weighing these factors, it is plain that transfer is not warranted.

First, the parties' agreement calls for application of the state law of this forum – Maryland law. Second, there is no allegation that Meissner will receive and unfair trial or be harassed by litigating in Maryland. Third, this case centers around CoStar's database services and its contract with Meissner and/or Twinkle Appraisal all of which are located in and administered in Maryland. As such, many of the relevant documents are to be found in Maryland. *See* Exh. B, Williams Decl. at ¶ 10. The interests of justice weigh heavily against transfer.[6]

---

[6] CoStar also has a legitimate expectation that its forum selection clause will be enforced.

# CONCLUSION

For the foregoing reasons, CoStar respectfully requests that Defendant's motions to dismiss or, in the alternative, for a venue transfer pursuant to 28 U.S.C. § 1404 be denied.

Dated: December 19, 2008

Respectfully submitted,

_____/s/_____
Shari Ross Lahlou, Bar. No. 16570
William Sauers Bar. No. 17355
Crowell & Moring LLP
1001 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
Telephone (202) 624-2500
Facsimile (202) 628-5116
Email  slahlou@crowell.com
           wsauers@crowell.com

*Attorneys for Plaintiffs CoStar Realty Information, Inc., a Delaware Corporation, and CoStar Group, Inc., a Delaware Corporation*

# CERTIFICATE OF SERVICE

I hereby certify that service required by Fed. R. Civ. P. 5 was made, and that a true copy of the above document, with attachments was served upon the attorneys of record by electronically filing the document with the Clerk of Court using the CM/ECF system on December 19, 2008.

        /s/
William Sauers Bar. No. 17355
CROWELL & MORING LLP
1001 Pennsylvania Avenue, NW
Washington, D.C. 20004-2595
Telephone: (202) 624-2500
Facsimile: (202) 628-5116
Email: wsauers@crowell.com

*Attorneys for Plaintiffs CoStar Realty Information, Inc., and CoStar Group, Inc.*