IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

```
                                :
COSTAR REALTY
  INFORMATION, INC., et al.     :

      v.                        :      Civil Action No. DKC-08-2766

                                :

ROBIN MEISSNER                  :

                                :
```

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this action is a "Motion to Dismiss Improper Party and Motion to Dismiss for Lack of Personal Jurisdiction or, Alternatively, to Transfer Venue," filed by Defendant Robin Meissner. (Paper 6). The issues are fully briefed and the court now rules pursuant to Local Rule 105.6, no hearing being deemed necessary. For the reasons that follow, Defendant's motion will be denied.

**I.   Background**

CoStar Realty Information and CoStar Group, Inc. ("Plaintiffs") are Delaware corporations with their principal places of business in Maryland. (Paper 1 ¶¶ 1, 2). Plaintiffs develop and maintain commercial real estate information databases. (*Id.* ¶ 10). Businesses, such as commercial real estate brokers, mortgage lenders, and investors, use Plaintiffs' databases for a variety of purposes, including matching buyers to properties, finding tenants, or researching brokers. (*Id.* ¶ 11).

With the exception of a very small amount of information Plaintiffs make available to the general public, only authorized users can access Plaintiffs' online databases. (*Id.* ¶ 12). Parties gain authorization by entering into a written License Agreement and subscribing to one or more of Plaintiffs' services. (*Id.*). The License Agreement limits the number of authorized users on each account. (*Id.* ¶ 13). After signing the agreement, each subscriber is assigned a unique user identification and password. (*Id.*). Each time a user logs in, the website displays a notice that advises "[b]y logging in you are agreeing to CoStar's terms of use," and "[a]ccess restricted to licensed users. Sharing of passwords is prohibited." (*Id.* ¶ 15).

Plaintiffs allege that on February 14, 2008, they suspended an Arizona company's access to the databases upon discovery that the company had been sharing its user name and password with Defendant Arffa. (*Id.* ¶ 24). After making this discovery, Plaintiffs contacted Defendant Arffa directly and advised him that his access was unauthorized and that he could not share another company's access to the databases. (*Id.* ¶ 25). On or about March 5, 2008, Defendant Meissner, an Arizona resident, contacted Plaintiffs seeking to license access to their CoStar COMPS® product. (*Id.* at 27). CoStar COMPS® was the same product Defendant Arffa had impermissibly accessed through the other account. (*Id.*). On March 11, 2008, Defendant Meissner signed a one-year License Agreement

for access to CoStar COMPS® for a single person.  (*Id.*)  The License Agreement contained provisions stating that Defendant Meissner would not provide third parties with access to, or use of, Plaintiffs' databases, and that she would not share her unique customer identification and password with others.  (Paper 6, Appx'B, CoStar Terms and Conditions ¶¶ 2, 17).  Plaintiffs allege that almost immediately after Defendant Meissner entered into the agreement, Defendant Arffa, who is not her employee or agent, began to access Plaintiffs' database using Defendant Meissner's account. (Paper 1 ¶ 28).

On October 21, 2008, Plaintiffs filed a six count complaint alleging (1) breach of contract by Defendant Meissner; (2) breach of contract by Defendant Arffa; (3) direct copyright infringement by Defendant Arffa; (4) contributory and vicarious copyright infringement by Defendant Meissner; (5) fraud by Defendants Arffa and Meissner; and (6) violation of 18 U.S.C. § 1030 by Defendant Arffa.  Defendant Meissner moved to dismiss Plaintiffs' complaint pursuant to Federal Rules of Civil Procedure 12(b)(2), (3), and (7), arguing that she is an improper party to the suit, her contacts with Maryland are insufficient to subject her to personal jurisdiction in Maryland, and venue in Maryland is improper. Alternatively, Defendant Meissner argues that pursuant to 28 U.S.C. § 1404(a), this case should be transferred to the United States District Court for the District of Arizona, Phoenix Division.  On

January 16, 2009, Plaintiffs' motion voluntarily to dismiss claims against Defendant Arffa was granted.

## II.   Motion to Dismiss

### A.   Personal Jurisdiction

Defendant moved to dismiss Plaintiffs' complaint on the ground that her contact with Maryland, which consists of entering into a contract with a Maryland corporation, transmission of information over the Internet to servers located in Maryland, and accessing servers located in Maryland, is insufficient to subject her to personal jurisdiction.  (Paper 6, at 4).  Plaintiffs respond that forum selection clauses in both the License Agreement and the Terms of Use are binding and confer jurisdiction on this court, and that specific personal jurisdiction over Defendant is proper because she transacted business in Maryland and caused tortious injury in the state.  (Paper 11, at 12).

### 1.   Standard of Review

When a court's power to exercise personal jurisdiction over a nonresident defendant is challenged by a motion under Federal Rule of Civil Procedure 12(b)(2), "the jurisdictional question is to be resolved by the judge, with the burden on the plaintiff ultimately to prove grounds for jurisdiction by a preponderance of the evidence."[1]  *Carefirst of Maryland, Inc. v. Carefirst Pregnancy*

---

[1]   In Plaintiffs' opposition, Plaintiffs mis-characterize Defendant's motion as a 12(b)(6) motion, and argue that it must be
(continued...)

4

*Ctrs., Inc.*, 334 F.3d 390, 396 (4ᵗʰ Cir. 2003)(citing *Mylan Labs., Inc. v. Akzo, N.V.*, 2 F.3d 56, 59-60 (4ᵗʰ Cir. 1993)).    If jurisdiction turns on disputed facts, the court may resolve the challenge after a separate evidentiary hearing, or may defer ruling pending receipt at trial of evidence relevant to the jurisdictional question.  *Combs v. Bakker,* 886 F.2d 673, 676 (4ᵗʰ Cir. 1989).    If the court chooses to rule without conducting an evidentiary hearing, relying solely on the basis of the complaint, affidavits and discovery materials, "the plaintiff need only make a *prima facie* showing of personal jurisdiction." *Carefirst*, 334 F.3d at 396; *see also Mylan*, 2 F.3d at 60; *Combs*, 886 F.2d at 676.    In determining whether the plaintiff has proven a *prima facie* case of personal jurisdiction, the court "must draw all reasonable inferences arising from the proof, and resolve all factual disputes, in the plaintiff's favor."  *Mylan,* 2 F.3d at 60; *Carefirst*, 334 F.3d at 396.

**2.   Forum Selection Clause**

The forum selection clause in the Licensing Agreement provides, in pertinent part:

> The federal and state courts located in the State of Maryland shall be the exclusive jurisdiction for any action brought against CoStar in connection with this Agreement or use of the Licensed Product.  Licensee irrevocably consents to the jurisdiction of the federal and

---

¹(...continued)
denied under the well-pleaded complaint rule.  This aspect of Defendant's motion to dismiss is actually properly analyzed under 12(b)(2).

> state courts located in the State of Maryland,
> or in any State where Licensee's Authorized
> Users are located, for any action brought
> against Licensee in connection with this
> Agreement or use of the Licensed Product.

(Paper 6, at 10). The forum selection clause in the Terms of Use

provides in pertinent part:

> The federal and state courts located in the
> State of Maryland shall be the exclusive
> jurisdiction for any action brought against
> CoStar in connection with these Terms of Use or
> use of the Product. You irrevocably consent to
> the jurisdiction of the federal and state
> courts located in the State of Maryland, and to
> the jurisdiction of the federal and state
> courts located in any State where you are
> located, for any action brought against you in
> connection with these Terms of Use or use of
> the Product.

(Paper 11, Ex. 1, Terms of Use, at 9). Defendant argues that the

forum selection clauses included as part of both the Terms of Use

and the Licensing Agreement were permissive, and therefore should

be given little weight. (Paper 6, at 10). Plaintiffs argue that

the clauses are binding and demonstrate Defendant's agreement to

suit in Maryland. (Paper 11, at 10).

A forum selection clause can be a consent to personal

jurisdiction, or at least a waiver of any objection, when invoked

by the plaintiff:[2]

---

[2]    When a forum selection clause is used defensively, as a
basis for a motion to dismiss, it is viewed under Rule 12(b)(3) as
an objection to venue. *Sucampo Pharm., Inc. v. Astellas Pharma.,
Inc.*, 471 F.3d 544, 549-50 (4th Cir. 2006).

> In the commercial context a forum selection
> clause, even one for arbitration, confers
> personal jurisdiction on the courts of the
> chosen forum. *See Unionmutual Stock Life Ins.*
> *Co. of Am. v. Beneficial Life Ins. Co.*, 774
> F.2d 524, 527 (1st Cir. 1985).

*Menorah Ins. Co., Ltd. v. INX Reinsurance Corp.,* 72 F.3d 218, 222

n.6 (1st Cir. 1995).   Two decades ago, a judge of this court

synthesized the basic approach:

> The United States Supreme Court has held
> repeatedly that since the personal jurisdiction
> requirement is a waivable right, "express or
> implied consent to the jurisdiction of [a]
> court" is sufficient to satisfy the
> requirements of due process for assumption of
> jurisdiction over a nonresident defendant.
> *Insurance Corp. of Ireland v. Compagnie des*
> *Bauxites de Guinee*, 456 U.S. 694, 702 (1982);
> *see also Petrowski v. Hawk-eye Security*, 350
> U.S. 495, 496 (1956) ("respondent, by its
> stipulation, waived any right to assert lack of
> personal jurisdiction over it").
> This same Court, however, has suggested
> that forum-selection clauses may not be binding
> upon a nonresident defendant if she or he has
> met the heavy burden of showing that its
> "enforcement would be unreasonable, unfair or
> unjust." *The Bremen v. Zapata Off-Shore Co.*,
> 407 U.S. 1, 15 (1972); *see also Burger King*
> *Corp. v. Rudzewicz*, 471 U.S. 462, 472 n.14
> (1985).

*Toshin Prod. Co., Ltd. v. Woods*, 1989 WL 87015, at *2 (D.Md. July

28, 1989).

Defendant argues that enforcement of the forum clause would be

unreasonable because it would seriously be difficult and

inconvenient for her to litigate this case in Maryland.   In support

of this claim, Defendant alleges that litigation in Maryland would

cause her severe financial hardship and undue burden and would prejudice her ability to defend herself.  Defendant, however, has provided no evidence of her financial condition, nor has she provided an estimate of how much more it would cost to litigate the case in Maryland than in Arizona.  While it might be true that litigating this action in Maryland will be more expensive for Defendant than doing so in Arizona, these increased expenses do not affect the validity of the forum selection clause.  The mere assertion that litigation will be more expensive for one party than another is not a reason for declaring the clause invalid.  *See Moses v. Bus. Card Express, Inc.*, 929 F.2d 1131, 1138-39 (6th Cir. 1991).

Defendant has simply failed to substantiate her contention that litigation in Maryland "will be so gravely difficult and inconvenient that [she] will for all practical purposes be deprived of [her] day in court."  *Bremen*, 407 U.S. at 17-18.  Mere allegations of serious inconvenience are insufficient to meet the "heavy burden" of showing why enforcement would be unreasonable. Thus, enforcement of the consents to jurisdiction in the forum selection clauses is reasonable.

### 3.  Maryland Long Arm Statute/Due Process

Even if the forum selection clauses did not confer personal jurisdiction, Defendant's conduct satisfies the Maryland long arm statute and due process.  A federal district court may exercise personal jurisdiction over a non-resident defendant "if (1) an

applicable state long-arm statute confers jurisdiction and (2) the assertion of that jurisdiction is consistent with constitutional due process." *Nichols v. G.D. Searle & Co.,* 991 F.2d 1195, 1199 (4th Cir. 1993). Maryland's long-arm statute, Md. Code Ann., Cts. & Jud. Proc. § 6-103, authorizes the exercise of personal jurisdiction to the limits permitted by the Due Process Clause of the Fourteenth Amendment. *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 710 (4th Cir. 2002), *cert. denied*, 537 U.S. 1105 (2003). Yet, courts may not "simply dispense with analysis under the long arm statute," but rather must interpret it "to the limits permitted by the Due Process Clause when [they] can do so consistently with the canons of statutory constructions." *Mackey v. Compass Mktg., Inc.*, 391 Md. 117, 141 n.6, *cert. dismissed*, 127 S.Ct. 34 (2006). The constitutional question is whether the defendant purposefully established "minimum contacts" with Maryland such that maintenance of the suit does not offend "traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)(quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)); *see also Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985).

Maryland's long-arm statue provides in pertinent part:

> (b) A court may exercise personal jurisdiction over a person, who directly or by an agent:
>
> > (1) Transacts any business or performs any character of work or service in the State;
> >
> > . . . .

(3) Causes tortious injury in the State by an act or omission in the State;

(4) Causes tortious injury in the State or outside of the State by an act or omission outside the State if he regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from goods, food, services, or manufactured products used or consumed in the State;

. . . .

(c)(1)(2) The provisions of this section apply to computer information and computer programs in the same manner as they apply to goods and services.

Md. Code Ann., Cts & Jud. Proc., § 6-103.

Defendant's conduct satisfies subsection (b)(1) of the Maryland long arm statute.  Maryland courts interpret subsection (b)(1) as not requiring that a defendant ever be physically present in the state.  For example, in *Bahn v. Chicago Motor Club Ins. Co.*, 98 Md.App. 559, 568-70 (1993), the Court of Special Appeals of Maryland held that personal jurisdiction was not precluded by the fact that the defendant was incorporated and licensed to do business in Illinois.  Instead, the court looked to factors including the fact that the defendant sent mail to the Maryland plaintiffs, contracted with them, and received payments sent by them from Maryland, to determine jurisdiction was appropriate.  An essential factor in determining whether business transactions give rise to specific

jurisdiction is whether the defendant initiated the contact. *Giannaris v. Cheng,* 219 F.Supp.2d 687, 692 (D.Md. 2002); *see also Nueva Eng'g, Inc. v. Accurate Elec., Inc.,* 628 F.Supp.953, 955 (D.Md. 1986). Here, Defendant initiated the contact with Plaintiffs and participated in transactions similar to those in *Bahn.* Defendant entered into a licensing agreement, sent transmissions via e-mail, contacted Plaintiffs by phone, and repeatedly accessed Plaintiffs' Maryland-based servers. These activities are sufficient to constitute "doing business" for the purposes of subsection (b)(1).

Defendants' contacts also satisfy the due process prong of personal jurisdiction. To determine whether the exercise of specific jurisdiction comports with due process, a court considers (1) the extent to which the defendant has purposefully availed itself of the privilege of conducting activities in the forum state; (2) whether the plaintiff's claims arise out of those activities directed at the state; and (3) whether the exercise of personal jurisdiction would be constitutionally "reasonable." *See, e.g., Carefirst,* 334 F.3d at 397. First, Defendant's actions constitute "doing business" in Maryland, and she was the party who initiated the business relationship. Although Defendant contends that she was not aware of the fact that she was directing her actions into Maryland, Plaintiffs' website lists Plaintiffs' address in Maryland. (Paper 11, at 13). Second, Plaintiffs claims arise out of

activities directed at the state because they are related to
Defendant's contract with Plaintiffs.  Finally, the exercise of
personal jurisdiction in this case is reasonable because Defendant
signed the License Agreement and repeatedly agreed to the Terms of
Use, both of which identified Maryland as the chosen forum.

Defendant also argues that Maryland's fiduciary shield doctrine
precludes jurisdiction.  The fiduciary shield doctrine protects an
individual who acts in a state solely as the representative of a
corporation, from suit in that state. *United States v. Undetermined
Quantities of Articles of Drug*, 145 F.Supp.2d 692, 706 (D.Md. 2001);
*see also Christian Book Distributors, Inc. v. Great Christian Books,
Inc.*, 137 Md.App. 367, 378-79(2001).  There are two exceptions to
the doctrine.  First, it does not apply if the individual is the
alter ego of the corporation.  Second, it does not apply if the
individual has a "substantial interest" in the corporation.
*Undetermined Quantities of Articles of Drug,* 145 F.Supp.2d at 706.
"Furthermore, courts have held that, because section (b)(1) of the
long-arm statute purports to authorize jurisdiction to the
peripheral limits of due process, the fiduciary shield doctrine does
not apply when personal jurisdiction is based upon this provision."
*Id.*

Defendant is not entitled to the protection of the fiduciary
shield doctrine.  First, personal jurisdiction is based upon section
(b)(1) of the long-arm statute.  Second, the exceptions to the

12

fiduciary shield doctrine apply.  Defendant is both the managing member and only identified shareholder of Twinkle Appraisal.  She notes that she is the "sole representative of Twinkle Appraisal, LLC certified to conduct real estate appraisals."  (Paper 6, App'x A, R. Meissner Aff., ¶ 4).  Thus, even if Defendant is not an alter-ego of Twinkle Appraisal, she has a substantial interest in the company. Defendant was the party who personally initiated contact with Plaintiffs, negotiated the terms, and signed the agreement.  "'It would violate a sense of fairness to permit [Defendant] to solicit, negotiate, and consummate corporate business in Maryland in which [she] personally had so direct and substantial an interest and then allow [her] to avoid responding in Maryland to legal charges.'" *Undetermined Quantities of Articles of Drug*, 145 F.Supp.2d at 706 (quoting *Zeman v. Lotus Heart, Inc.*, 717 F.Supp. 373, 377 (D.Md.1989)).

## B.   Failure to State a Claim - Improper Party

Defendant also moved to dismiss on the basis that she is not a "proper party"; she contends that during the sales process, she identified herself as the Managing Member of Twinkle Appraisal, LLC, ("Twinkle Appraisal") and that she entered into the agreement with Plaintiffs in that capacity.[3]  (Paper 6, App'x A, R. Meissner Aff.,

---

[3]     In Defendant's motion she asserts that she should be dismissed as an improper party pursuant to Federal Rule of Civil Procedure 12(b)(7).   Federal Rule of Civil Procedure 12(b)(7) permits dismissal of a suit if Plaintiff failed to join an
(continued...)

¶ 4).   Twinkle Appraisal is an Arizona corporation with its principal place of business in Arizona.   (*Id.* ¶ 7).   Defendant argues that she is legally distinct from Twinkle Appraisal, and therefore she is an improper party to the suit. (*Id.* ¶ 6). Plaintiffs argue that Defendant is a proper party because she personally entered into and breached the contract, engaged in the unlawful copyright infringement, and committed fraud. (Paper 11, at 7-8).   There are different standards of corporate officer liability for breach of contract, copyright infringement, and fraud. Defendant's personal liability for each count will be reviewed separately.

### 1.   Standard of Review

The purpose of a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) is to test the sufficiency of the plaintiff's complaint. *See Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). Except in certain specified cases, a plaintiff's complaint need only satisfy the "simplified pleading standard" of Rule 8(a), *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief."    Fed.R.Civ.P. 8(a)(2).

---

[3](...continued)
indispensable party as defined in Federal Rule of Civil Procedure 19.   Rule 12(b)(7) does not govern dismissal or replacement of improper party.   The motion is most appropriately treated under Rule 12(b)(6) because Defendant contends that the complaint fails to state a claim against her because she acted on behalf of a corporation, and not in her individual capacity.

Nevertheless, "Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 n.3 (2007). That showing must consist of at least "enough facts to state a claim to relief that is plausible on its face." *Id*. at 570.

In its determination, the court must consider all well-pled allegations in a complaint as true, *Albright v. Oliver*, 510 U.S. 266, 268 (1994), and must construe all factual allegations in the light most favorable to the plaintiff. *See Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 (4th Cir. 1999) (citing *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)). The court need not, however, accept unsupported legal allegations, *Revene v. Charles County Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989), legal conclusions couched as factual allegations, *Papasan v. Allain*, 478 U.S. 265, 286 (1986), or conclusory factual allegations devoid of any reference to actual events, *United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979). In sum, "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555 (internal citations omitted).

**2.   Count I: Breach of Contract**

Under Maryland law, generally "shareholders are not held liable for debts or obligations of the corporation except where it is

15

necessary to prevent fraud or enforce a paramount equity."[4] *Damazo v. Wahby*, 259 Md. 627, 633 (1970). The fact that a shareholder controls and operates the corporation does not itself justify piercing the corporate veil; however, where a shareholder has entered into an agreement with fraudulent intent, the corporate veil may be pierced and the shareholder may be held personally liable. *Id.* at 633-34. In *Colandrea v. Colandrea*, 42 Md.App. 421 (1979), the Court of Special Appeals of Maryland held that in order to prove fraudulent intent and pierce the corporate veil, five elements must be established by clear and convincing proof:

> (1) a material representation of a party was false, (2) falsity was known to that party or the misrepresentation was made with such reckless indifference to the truth as to impute knowledge to him, (3) the misrepresentation was made with the purpose to defraud (scienter), (4) the person justifiably relied on the misrepresentation, and (5) the person suffered damage directly resulting from the misrepresentation.

*Id* at 428.

Plaintiffs' breach of contract claim against Defendant is sufficient to survive a 12(b)(6) challenge because Plaintiffs' allegations, if proven, would satisfy all five elements of fraud necessary to pierce the corporate veil. First, Plaintiffs allege that Defendant's material representation that she would abide by the contract terms, namely that she would not share her password and

---

[4]    The parties do not dispute the validity of a choice of law clause that dictates Maryland law governs the agreement.

that she would limit use of the database to herself and employees
working directly for her, was false.  Second, Plaintiffs allege that
Defendant was aware of this falsity at the time she entered into the
agreement.    Third,   Plaintiffs   further   allege   that   the
misrepresentation was made with the intent to defraud because
Defendant Meissner established the account, at least in part, in
order to provide access for Defendant Arffa.   Fourth, Plaintiffs
allege that they had a reasonable expectation to rely on the written
contract and Defendant's repeated electronic promises to uphold it.
Finally, Plaintiffs allege they suffered damage, through lost income
and copyright infringement, as a result of Defendant's breach.
(Paper 1 ¶¶ 37, 54, 57).   Thus, Plaintiffs have stated a breach of
contract claim against Defendant for which she may be found
personally liable, even if she is legally distinct from Twinkle
Appraisal.

### 3.   Count   IV:   Contributory   and   Vicarious   Copyright Infringement

Officers of a corporate body may be held personally liable for
the corporation's copyright infringement.   *Microsoft Corp. v.
Maryland Micro.com, Inc.*, 2003 WL 21805213, at *4 (D.Md. July 15,
2003); *see also Southern Bell Tel & Tel. Co. v. Associated Tel.
Directory Publishers,* 756 F.2d 801 (11th Cir. 1985).   Liability
arises when an "individual, including a corporate officer . . . has
the ability to supervise infringing activity and has a financial

interest in that activity, or . . . personally participates in that activity . . . ." *Lauratex Textile Corp. v. Allton Knitting Mills, Inc.*, 517 F.Supp. 900, 904 (S.D.N.Y. 1981).

Plaintiffs allege that they own valid, registered copyrights in the content in the databases. (Paper 1 ¶ 39). Plaintiffs allege that Defendant Meissner directly or indirectly provided her CoStar username and passcode to Arffa with knowledge that he would access CoStar's website. (*Id.* ¶ 49). Plaintiffs also allege that Meissner facilitated and materially contributed to Arffa's infringement, committing contributory infringement. (*Id.* ¶ 50). Plaintiffs further allege that Arffa paid Meissner for use of her CoStar username and passcode, thereby committing willful vicarious infringement. (*Id.* ¶ 52). Accordingly, Plaintiffs have alleged sufficient facts to support a contributory and vicarious copyright infringement claim against Defendant.

### 4.   Count V: Fraud

Under Maryland law, the "participation" standard is used to determine whether a corporate officer may be held personally liable for a tort committed by the corporation. *Shipley v. Perlberg*, 140 Md.App. 257, 265 (2001). In *Levi v. Schwartz*, 201 Md. 575, 583 (1953), in which the court noted:

> an officer of a corporation who takes part in
> the commission of a tort by the corporation is
> personally liable therefore, but an officer of
> a corporation who takes no part in the
> commission of a tort committed by the
> corporation is not personally liable unless he

18

>           specifically directed the particular acts to be
>           done or participated or co-operated therein.

The dispute in *Shipley* involved lead paint poisoning. The defendant was an agent and officer of a corporation that owned rental properties. The defendant was actively involved only with the buying and selling of the properties, and his brother, under a different corporate name, handled rental and management. The Court of Special Appeals of Maryland found that there was no relevant evidence suggesting that defendant had any knowledge of the presence of lead paint, or that he had ever participated in or directed the failure to remove it and could not be held personally. *Shipley,* 140 Md.App. at 276.

The facts alleged in this case are in sharp contrast to those in *Shipley*. Here, Plaintiffs allege that Defendant obtained the license through fraud and deceit by failing to identify the true purposes for the license. Plaintiffs allege Defendant personally contacted their agent and obtained the subscription to their website, and made representations to CoStar and its employees and agents that use of the license would be limited to Defendant's employees or independent contractors. Additionally, Defendant allegedly controlled Arffa's access to Plaintiffs' databases, which would have been denied if Plaintiff had been aware that Arffa was using Defendant's username and passcode. (Paper 1 ¶¶ 57, 58). Thus, Plaintiffs have alleged sufficient facts to support a fraud claim against Defendant.

### C.    Venue

Defendant also moved to dismiss for improper venue under Rule 12(b)(3) or, in the alternative, to transfer venue under 28 U.S.C. § 1404(a).  Plaintiffs assert that venue is proper and that the forum selection clauses in the License Agreement and Terms of Use are binding.   Defendant argues the forum selection clauses are permissive, and therefore hold little weight.

### 1.    Standard of Review

A plaintiff may properly bring a federal diversity action in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred."   28 U.S.C. § 1391(a)(2).  A plaintiff may properly bring a copyright claim in any district where the defendant "may be found."  28 U.S.C. § 1400(a).

Section 1404(a) provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  "To prevail on a motion to transfer venue under § 1404, 'the defendant must show by a preponderance of the evidence' that the proposed transfer will better and more conveniently serve the interests of the parties and witnesses and better promote the interests of justice." *Helsel v. Tishman Realty Constr. Co., Inc.*, 198 F.Supp.2d 710, 711 (D.Md. 2002)(internal quotation omitted). *See also Lynch v. Vanderhoef Builders*, 237 F.Supp.2d 615, 617 (D.Md. 2002); *Dicken v. United States*, 862 F.Supp. 91, 92 (D.Md. 1994).  In

order to satisfy this burden, the defendant should submit affidavits from witnesses and parties involved that explain the inconvenience and hardship he "would suffer if the case were heard in the plaintiff's chosen forum." *Dow v. Jones*, 232 F.Supp.2d 491, 499 (D.Md. 2002)(citing *Helsel*, 198 F.Supp.2d at 712). Mere assertions of inconvenience or hardship, without more, are insufficient to sustain a motion to dismiss or to transfer pursuant to § 1404(a). *See Dow*, 232 F.Supp.2d at 499; *Helsel*, 198 F.Supp.2d at 712.

In deciding a motion to transfer venue under § 1404(a), the court must "weigh in the balance a number of case-specific factors." *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988). The host of convenience factors a court should consider include:

> (1) the plaintiff's choice of forum; (2) relative ease of access to sources of proof; (3) availability of compulsory process for attendance of unwilling witnesses, and the cost of obtaining attendance of willing and unwilling witnesses; (4) possibility of a view of the premises, if appropriate; (5) enforceability of a judgment, if one is obtained; (6) relative advantage and obstacles to a fair trial; (7) other practical problems that make a trial easy, expeditious, and inexpensive; (8) administrative difficulties of court congestion; (9) local interest in having localized controversies settled at home; (10) appropriateness in having a trial of a diversity case in a forum that is at home with the state law that must govern the action; and (11) avoidance of unnecessary problems with conflicts of laws.

*Brown v. Stallworth*, 235 F.Supp.2d 453, 456 (D.Md. 2002)(quoting *Choice Hotels Int'l, Inc. v. Madison Three, Inc.*, 23 F.Supp.2d 617, 622, n.4 (D.Md. 1998)(internal citations omitted)). The decision

whether to transfer venue is committed to the sound discretion of the trial court.  *See Brock v. Entre Computer Ctr., Inc.*, 933 F.2d 1253, 1257 (4th Cir. 1991).  *See also Stewart*, 487 U.S. at 29 (§ 1404(a) intended "to place discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness'")(quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)).

###    2.    Forum Selection Clauses

As noted before, when a defendant contests the validity of a forum selection clause for venue purposes, the clause is properly reviewed under Rule 12(b)(3). *Sucampo Pharm., Inc. v. Astellas Pharma, Inc.*, 471 F.3d at 549-50.   Under both Maryland and federal law, the standard announced by the Supreme Court of the United States in *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1 (1972), applies for analyzing the enforceability of forum selection clauses.  *Gilman v. Wheat, First Sec. Inc.*, 345 Md. 361, 371-78 (1997).  In *Bremen*, the Supreme Court held that forum selection clauses "are *prima facie* valid and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances." *Bremen*, 407 U.S. at 10.

Prior to conducting the *Bremen* analysis to determine whether a clause is reasonable, the court must determine whether the forum-selection clause at issue is mandatory or permissive.  *Eisaman v. Cinema Grill Systems, Inc.*, 87 F.Supp.2d 446, 449 (D.Md. 1999).  If

the clause is mandatory, the *Bremen* analysis applies.   If it is permissive, it has little effect.   *Berry v. Soul Circus, Inc.*, 189 F.Supp.2d 290, 293 n.2 (D.Md. 2002).   In order for the clause to be mandatory, either the language of the clause itself must be exclusive, or the power to decide the forum must be clearly conferred on the plaintiffs.   For example, in *Eisaman,* the court upheld as mandatory a forum selection clause that read "[a]t our (plaintiff's) option, jurisdiction and venue for all litigation . . . related to this Agreement will be proper only in the United States District Court, Northern District of Georgia, Atlanta Division, or the Superior Court of Fulton County, Georgia . . . .   You consent to the exercise of *in personam* jurisdiction by courts."   *Eisaman*, 87 F.Supp.2d at 449.   The court upheld the clause, noting that the phrases "all litigation" and "only," were mandatory language, and that the plaintiff, through the use of the term "at our option" was given authority to choose the forum.   *Id.* at 450.   Conversely, in *IntraComm, Inc. v. Bajaj*, 492 F.3d 285 (4th Cir. 2007), the Fourth Circuit found a forum-selection clause that read "either party shall be free to pursue its rights at law or equity in a court of competent jurisdiction in Fairfax County, Virginia," was permissive because it merely permitted jurisdiction in one court without prohibiting jurisdiction in another through "specific language of exclusion." *Id.* at 290.

Here, the forum-selection clauses state that Defendant "irrevocably consent[ed]" to suit in Maryland. The phrase "irrevocably consents" clearly expresses the Defendants' consent to suit in Maryland.[5] *See Tech USA, Inc. v. Evans*, 2009 WL 73637, at *4 (D.Md. Jan. 7, 2009)(finding the phrase "['hereby consents'] unambiguously expresses the parties' consent to suit"); *see also RGC Int'l Inv., LDC v. ARI Network Serv., Inc.,* 2003 WL 21843637, at *1-2 (D.Del. July 31, 2003). Plaintiffs' argument that the clauses are mandatory is further bolstered by the fact that Defendant agreed to Plaintiffs' choice of forum in two separate agreements, the Terms of Use and the License Agreement.[6]

----

[5]    Other jurisdictions have found that similar language constitutes a permissive forum selection clause. *See*, *e.g. Blanco v. Banco Industrial De Venezuela, Blanco v. Banco Industrial De Venezuela, S.A.,* 997 F.2d 974, 976, 979 (2nd Cir. 1993)(a clause containing the language "any legal action . . . may be brought in . . . the Courts of the State of New York . . . [parties] irrevocably submit to the jurisdiction of each such court . . ." was permissive because it left open the possibility that the action could be brought elsewhere); *see also Credit Francais Int'l, S.A. v. Sociedad Financiera de Comercio, C.A.,* 490 N.Y.S. 2d 670 (Sup.Ct. 1985)(clause identifying fora in which suit "may" be brought, but added defendant's "irrevocabl[e] consent to suit in those designated fora at the plaintiff's election . . . " was mandatory).

[6]    Plaintiffs rely on *Costar Realty Information Inc. v. Atkinson Hunt*, No. PJM06-655 (D.Md. Aug. 28.2006) to support their proposition that the forum selection clause is mandatory. However, that opinion is inapposite as the dispute in *Atkinson Hunt* was over whether defendant was a party to the contract and therefore could be bound by the clause; the parties did not argue whether the clause was permissive or mandatory.

Having determined that the clause is mandatory, the court must decide whether enforcement would be "unreasonable."  The complaining party bears a heavy burden of demonstrating unreasonableness. *Bremen*, 407 U.S. at 15 ("[T]he forum clause should control absent a strong showing that it should be set aside."); see *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 592 ("The party claiming [unfairness] should bear a heavy burden of proof.").  Enforcement is deemed unreasonable only when (1) agreement to the forum-selection clause was induced by fraud or overreaching, (2) "enforcement would contravene a strong public policy of the forum in which suit is brought," or (3) "trial in the contractual forum will be so gravely difficult and inconvenient that [the complaining party] will for all practical purposes be deprived of his day in court."  *Bremen*, 407 U.S. at 12-19.

Defendant challenges the reasonableness of the clause by asserting that enforcement will be gravely difficult and inconvenient for her.  However, as discussed above, Defendant has offered no proof of such hardship.  As a result, enforcement of the clause is reasonable.

### 3.   Dismissal for Improper Venue

Even if the forum-selection clauses were not binding on Defendant, venue would still be proper.  Defendant argues that Plaintiffs' action should be dismissed under 28 U.S.C. §§ 1391(b) and 1400(a).  In order to survive Defendant's motion to dismiss for

improper venue, Plaintiffs only need make a *prima facie* showing that venue in this district is proper. *Mitrano v. Hawes*, 377 F.3d 402, 405 (4th Cir. 2004). Venue is proper under 1391(b) where "a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated." 28 U.S.C. § 1391(b). Plaintiffs have made a *prima facie* showing that a substantial part of the events giving rise to the claim occurred in Maryland as they contracted from Maryland, and the alleged fraudulent access took place on servers located in Maryland. Additionally, Plaintiffs' servers and associated copyrighted material, which constitute property that is the subject of the action, are located in Maryland.

Venue is proper for claims brought under the Copyright Act in any district where the defendant "may be found." 28 U.S.C. 1400(a). The term "may be found" in 1400(a) is interpreted to mean any district which may assert personal jurisdiction over a defendant. *Palmer v. Braun*, 376 F.3d 1254, 1259 (11th Cir. 2004); *see also Milwaukee Concrete Studios, Inc. v. Fjeld Mfg. Co.*, 8 F.3d 441, 445-46 (7th Cir. 1993). As discussed above, the exercise of personal jurisdiction by a Maryland court is proper over Defendant. Therefore, under both 1391(b) and 1400(a), venue is proper in this court.

### 4.   Change of Venue

Defendant also argues for a transfer of venue pursuant to 28 U.S.C. 1404(a).  First, deference is generally given to a plaintiff's choice of forum.  *See Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255-56 (1981) (generally, there is "a strong presumption in favor of the plaintiff's choice of forum").  Second, the relative ease of access to sources of proof weighs in Plaintiffs' favor.  While Defendant asserts in her affidavit that litigation in Maryland would cause her severe financial hardship, she has not identified any witnesses or proof, other than herself and the computer used to access the databases, that are present in Arizona.  Conversely, Plaintiffs argue that their businesses are located in Maryland and that all witnesses that may testify in the litigation reside in Maryland and would be inconvenienced by transfer.  Third, Maryland has a legitimate interest in protecting corporations that have their principal place of business inside the state.  Fourth, the parties have clearly agreed to allow Maryland law to govern the dispute.  This heavily weighs against transfer as it would impose hardships on an Arizona court, unfamiliar with Maryland law, when a Maryland court is available to hear the case.  *Brown*, 235 F.Supp.2d at 457. Accordingly, the request for a transfer of venue will be denied.

## III. Conclusion

For the foregoing reasons, Defendant's motion to dismiss will be denied.  A separate Order will follow.


_____/s/_____
DEBORAH K. CHASANOW
United States District Judge